IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sonjia R. Lindsey,   3:20cv1127-JGC

    Plaintiff,

    v.   **ORDER**

Commissioner of Social Security,

    Defendant.

This is an appeal from the denial of Social Security benefits. The Honorable Magistrate Judge William H. Baughman, Jr. has issued a Report and Recommendation, recommending that I grant plaintiff's petition for review in part and remand the case to the Commissioner for further proceedings consistent with the Report and Recommendation. (Doc. 24). The Commissioner has filed an objection. (Doc. 25).

For the following reasons, I overrule the Commissioner's objection and I approve and adopt Magistrate Judge Baughman's Report and Recommendation.

**Discussion**

Magistrate Judge Baughman recommended that I remand this case because the ALJ failed to provide a sufficient explanation for her evaluation of Lindsey's treating psychiatrist, Dr. Kelly Sprout's, opinion. He found that evaluation lacking because it did not comply with the Commissioner's revised standard for evaluating medical opinions.

1

The revised regulation, 20 C.F.R. § 404.1520c,[1] requires ALJs to "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." In doing so they must address what the Commissioner has designated as the "most important factors": supportability and consistency. *Id.* § 404.1520c(b)(2).

> Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 1520c(b)(2)c

The factors to which subsection (b)(2) refers are:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant. . . .

---

[1] Since Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

        (ii) Frequency of examinations. . . . .

        (iii) Purpose of the treatment relationship.

        (iv) Extent of the treatment relationship. . . .

    (v) Examining relationship. . . .

    (4) Specialization. . . .

    (5) Other factors. . . . .

20 C.F.R. § 404.1520c

    The Commissioner objects to Magistrate Judge Baughman's Report and Recommendation regarding the ALJ's treatment of Dr. Sprout's opinion regarding Plaintiff's mental health, arguing that "under the controlling regulations, the ALJ was not required to adopt each opinion or explain why [s]he did not adopt those opinions." (Doc. 25, pgID 1143). That broad pronouncement suffers from two fatal flaws.

    First, the Commissioner cites as his basis for that argument 20 C.F.R. § 404.1520c(b)(1). By its terms, the part of the regulation the Commissioner cites applies only "when a medical source provides multiple medical opinion(s)." When faced with two opinions from the same medical source, the regulation merely provides that the ALJ will address the multiple opinions from the same source "together in a single analysis." *Id.* Plaintiff's treating psychiatrist, Dr. Kelly Sprout, submitted only a single medical source statement. (Doc. 15, pgID 895-97).

    Moreover, regardless how many opinions a physician submits, Subsection 1520(c)(1) does not reduce the extent of the analysis an ALJ must provide. The regulation mandates that ALJs "explain how [they] considered the supportability and consistency factors for a medical source's opinions . . . ." The regulation further provides that, as to the remaining factors, ALJs "may, but are not required to, explain how [they] considered the other most persuasive factors."

3

Thus, although the revised regulation limits the extent of analysis an ALJ may provide regarding other factors, it still expressly requires an ALJ to explain how he or she analyzed the supportability and consistency factors. Both supportability and consistency are measured against the medical and nonmedical evidence of record. 20 C.F.R. § 1520(c)(1), (2).

Even under the revised regulation, the ALJ still must explain his or her treatment of the record evidence "with sufficient specificity to provide an accurate and logical bridge between the evidence and the resulting decision." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio) (Adams, J.).

As one court recently explained:

> The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.' " *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y.) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure ... to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn.).

*Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich.).

In this case the ALJ provided a recitation of some of the relevant medical evidence. That recitation included some intermittent signs of improvement in Plaintiff's mental health, but it also included evidence showing significant symptoms both before and after the periods of improvement. *See* (Doc. 15, pgID 102-03).

Those symptoms included audio hallucinations multiple days per week in which she heard voices telling her negative, paranoid messages, such as that someone was watching her, or

4

following her or that she should drive her car into a tree. (*Id.* pgID 102-03, 701). Plaintiff also experienced visual hallucinations. *See, e.g.*, (*Id.* pgID 103, 564).

The ALJ's recitation of this evidence showing serious symptoms that varied in intensity is insufficient to provide an explanation for her decision. "[W]here an ALJ's factual summary include[s] both supportive and contradictory information, it does little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Hardy, supra*, 2021 WL 3702170, at *5 (quoting *Warren I., supra*, 2021 WL 860506, at *8).

That a claimant has intermittent periods of improvement and regression is a recognized aspect of mental illness. "The Social Security regulations recognize that a claimant's level of functioning may vary considerably over time. Emphasizing evidence of the claimant's functioning at her best does not account for the frequency with which her functioning was significantly limited by her symptoms." *Fithen v. Comm'r of Soc. Sec.*, No. 17-14222, 2016 WL 1381822, at *8 (S.D. Ohio). Focusing on intermittent times when a claimant has been able to function at a higher level "fail[s] to consider the nature of mental health impairments, *i.e.*, that the symptoms of such impairments wax and wane from day-to-day." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 923 (S.D. Ohio 2016)

Dr. Sprout diagnosed Plaintiff as suffering from schizophrenia, paranoid type. (Doc. 15, pgID 973). She opined that Plaintiff was extremely limited in her abilities to: make judgments on simple work-related decisions or on complex work-related decisions. (*Id.*, pgID 974) She explained that Plaintiff "has paranoia that would effect [sic] her ability to make decisions as she at times will not be able to determine reality vs. delusions." (*Id.*).

Dr. Sprout opined that Plaintiff was extremely limited in her abilities to interact appropriately with the public, supervisors, and coworkers. She also found her extremely limited

in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*). Dr. Sprout explained that Plaintiff "has psychosis-hallucinations and paranoia that affect her perceptions of people and situations." (*Id.*).

In response to a question on the form asking whether she "believe[d] that [her] patient can work on a regular and sustained basis in light of her mental impairment, Dr. Sprout responded "no." (*Id.*, pgID 975). She explained that Plaintiff "has ongoing psychosis that affects her perception of reality." (*Id.*).

The ALJ rejected Dr. Sprout's opinion, deciding instead that Plaintiff suffered only moderate limitations in her abilities to understand, remember, or apply information, to interact with others and to maintain concentration persistence and pace and had only mild limitations in her ability to adapt or manage oneself. (*Id.*, pgID 98-99).

In doing so, she rejected Dr. Sprout's opinion that Plaintiff had extreme limitations in interacting with others, deciding instead that Plaintiff's social limitations were only moderate. (*Id.*, pgID 99). She also rejected Dr. Sprout's opinion regarding the frequency with which Plaintiff's mental health limitations would cause her to miss work. (*Id.* pgID 104).

However, she did not expressly accept or reject Dr. Sprout's opinions regarding Plaintiff's abilities to make even simple judgments on work-related decisions.[2] Instead she stated that "[t]he remaining limitations [in Dr. Sprout's opinion] are accommodated for by the adopted residual functional capacity ["RFC"] listed above." (*Id.*).

---

[2] It is troubling that the Commissioner's regulations also call for the ALJ to consider the claimant's ability to maintain concentration, persistence, and pace and to manage herself in terms of "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting," but the Commissioner's Medical Source Statement form only asks the physician to comment on two of the four so-called "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A)(2), 12.03(B)).

6

The ALJ was required to explain how the particular evidence in the case supported the limitations she included in her RFC finding rather than those Dr. Sprout opined Plaintiff's condition required. She failed to do so.

In her explanation, the ALJ did not address even the medical evidence she listed in her summary. That summary alone reflected that Plaintiff frequently suffered from paranoia and audio and visual hallucinations. Plaintiff's counseling treatment notes are, of course, far more expansive. They contain ample evidence that Plaintiff suffered from those and other symptoms consistently over time with only occasional periods of improvement.

Most notably, the ALJ did not reject Dr. Sprout's opinion that Plaintiff was extremely limited in her ability to make even simple work-related opinions. Instead, she claimed that she "accounted for" that opinion by limiting Plaintiff to "simple, routine, and repetitive tasks, but not at a production rate pace." (*Id.* pgID 105).

The ALJ did not discuss how that limitation was sufficient to respond to Plaintiff's inability to make even simple work-related decisions. Nor is it self-evident that the ALJ's stated limitation was sufficient to do so.

The regulation required the ALJ to address how consistent Dr. Sprout's opinions were with the medical evidence and how much they were supported by that evidence. They instructed her to measure supportability against "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520(c)(1). They required her to measure consistency against "the evidence from other medical sources and nonmedical sources." *Id.* § 404.1520(c)(2). It would be a rare case indeed in which an ALJ could meet those requirements without providing an explanation that directly addresses the medical evidence, particularly, the claimant's mental health treatment records.

7

Yet, here, the ALJ failed to respond to the significant medical evidence in the record that supported Plaintiff's claim and arguably contradicted her RFC determination. Instead, the ALJ's explanation relied exclusively on Plaintiff's activities.

This is not the rare case in which and ALJ could explain the supportability and consistency factors without reference to the medical evidence in that explanation. The medical evidence regarding Plaintiff's condition, particularly her treatment notes, amply reflect that she suffers from serious mental health limitations. In contrast, the activities that form the sole stated basis for the ALJ's rejection of Dr. Sprout's opinion are not particularly indicative of an ability to perform full-time work.

"[An] ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *see also Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 248 (6th. Cir 2007) (finding that activities such as driving, cleaning an apartment, caring for pets, reading, exercising, and watching the news "are not comparable to typical work activities").

The regulations require an ALJ to measure the claimant's RFC in terms of their ability to perform work on a sustained basis for a forty-hour work week. *Foster v. Comm'r of Soc. Sec.*, No. 3:18-CV-300, 2019 WL 11497232, at *5 (S.D. Ohio). "'[A] person's ability to engage in personal activities such as cooking cleaning and hobbies does not constitute substantial evidence that he or she had the functional capacity to engage in substantial gainful activity.'" *Ringel v. Colvin*, No. 1:12-CV-521, 2013 WL 6578736, at *7 (S.D. Ohio) (quoting *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998)), *report and recommendation adopted sub nom. Ringel v. Comm'r of Soc. Sec.*, No. 1:12-CV-00521, 2014 WL 287271 (S.D. Ohio); *see also*

8

*Theurer v. Comm'r of Soc. Sec.*, No. 3:14-CV-361, 2015 WL 9198681, at *11–12 (S.D. Ohio) ("Plaintiff's ability to engage in therapeutic and rehabilitative activities such as reading the Bible, going to church weekly, or attended Alcoholics Anonymous meetings, does not equate to an ability to work forty-hours per week."), *report and recommendation adopted*, No. 3:14-CV-361, 2016 WL 258643 (S.D. Ohio)

None of Plaintiff's daily activities are equivalent to full-time work or indicative that Plaintiff is capable of sustaining full-time work.

The ALJ placed emphasis on the fact Plaintiff managed to complete online courses for a coding certificate. She recognized, however, that Plaintiff needed extra time for assignments and tests as an accommodation for her mental health limitations. (Doc. 15, pgID 98, 99). She also recognized that Plaintiff ultimately failed the test for a coding certificate. (*Id.*).

Taking on-line courses in her own home, over three months, presumably for less than forty hours per week, with flexible scheduling and with accommodations for her slow performance, and then failing the test for a certificate hardly equates with full-time work. The type of unskilled work the ALJ found Plaintiff able to perform, (Doc. 15, pgID 106), ordinarily must be done at the employer's facility, in the presence of coworkers and under the scrutiny of supervisors, within set hours, with limited breaks or time off-task and without accommodations for an inability to maintain persistence concentration or pace.

The ALJ also pointed to Plaintiff's claim that she was able to "pay bills, count change, handle a savings account, and use a checkbook and money orders.") (*Id.*, pgID 98). These are just the type of activities that the courts have determined do not reflect an ability to perform substantial gainful employment. *See, e.g.*, *Cox. v. Comm'r of Soc. Sec.*, No. 1:18-cv-399, 2019 WL 3543077, at *4-5 (S.D. Ohio); *Foust v. Comm'r of Soc. Sec.*, No. 09-cv-14462, 2010 WL

9

5516486, at *7 (E.D. Mich.). Moreover, "to find a claimant has the capacity to perform a certain type of work, she 'must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Ortman v. Saul*, No. 4:19-CV-04049-VLD, 2019 WL 6829207, at *21 (D.S.D.) ( quoting *Thomas v. Shalala*, 876 F.2d 666, 669 (8th Cir. 1989)). Plaintiff's management of her finances does not show that she has that ability.

As to Plaintiff's ability to relate to others, the ALJ declared that "throughout the medical evidence of record, there are numerous occurrences where the claimant reported she was able to leave the house to engage in social activities with others." (*Id.*, pgID 99). Those activities however, involved going to church services and bible study and going to exercise classes at a gym. (*Id.*, pgID 104). It is difficult to imagine a less threatening or more welcoming environment in which to relate to others than in church activities. Working out in a gym exercise class does not require the frequency or complexity of interactions necessary for full-time employment. Moreover, none of those activities required Plaintiff to function successfully for anything like a forty-hour work week.

The ALJ also pointed to Plaintiff once going to dinner with an old friend, attending a single college basketball game, and once going on a trip to Columbus with her aunt and uncle. (*Id.* pgID 102-103, 104). It is well settled that these type of sporadic activities do not reflect the ability to sustain full-time employment. *See Miracle v. Celebreeze*, 351 F.2d 361, 379 (6th Cir. 1965); *Ringel, supra*, 2013 WL 6578736, at * 7; *Barnhorst v. Comm'r of Soc. Sec.*, No. 1:10-CV-526, 2011 WL 3811462, at *16 (S.D. Ohio), *report and recommendation adopted*, No. 1:10CV526, 2011 WL 3812639 (S.D. Ohio).

10

While activities of daily living remain a relevant consideration, merely referencing these types of limited activities without more does not provide substantial evidence to support the ALJ's decision. In relying on such activities as the sole basis for her opinion without engaging with any of the voluminous evidence supportive of Plaintiff's claim, the ALJ failed in her duty to provide a logical bridge between that evidence and her conclusion that Dr. Sprout's opinions were not supported by or consistent with it. As Magistrate Judge Baughman concluded, that failure renders the ALJ's decision here unreviewable.

Accordingly, it is ORDERED THAT:

1) Defendant's objection to the Report and Recommendation (Doc. 25) be, and the same hereby is, overruled;

2) The Report and Recommendation (Doc. 24) be, and the same hereby is, approved and adopted;

3) Plaintiff's request for review be, and the same hereby is, granted to the extent it seeks remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Report and Recommendation, and be, and the same hereby is denied in all other respects;[3] and

4) The Clerk shall mark this matter closed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[3] Plaintiff seeks, in the alternative, an immediate award of benefits. I am able to grant such an award, however, "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). The record here does not meet those requirements.